# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| S. REED MORGAN AND GREGORY G. PAUL | § § § | |
| v. | § § | SA-12-CV-1145-XR |
| METZGER LAW GROUP, ET AL. | § | |

### ORDER

On this day came on to be considered Defendants' motion to dismiss for lack of personal jurisdiction and motion to dismiss for improper service (docket no. 7), Defendants' second motion to dismiss (docket no. 22), and Plaintiffs' motion to file document under seal (docket no. 38).

### Background

Plaintiff S. Reed Morgan is a Texas attorney. Plaintiff Gregory G. Paul is an attorney practicing law in Texas, California and Pennsylvania.

Defendants Raphael Metzger and Kim Miller are California attorneys practicing law under the name Metzger Law Group.

Morgan alleges he was contacted by Metzger and Miller in November 2011 and entered into a written contract in January 2012 to assist the Metzger Law Group as lead trial counsel in five different lawsuits, one of which was styled *Gillan v. Safety-Kleen Systems, Inc*. *Gillan* was tried to a jury in California in March 2012, but a mistrial was declared. Morgan, and his law partner Paul, allege that the majority of trial preparation took place in their offices in Comfort, Texas. Plaintiffs argue that the Metzger Law Group does "a continuum of business in Texas."

Plaintiffs allege that the Defendants have refused to pay them for the legal services they rendered and costs they incurred and allege causes of action for fraud, fraudulent

misrepresentation, conversion, and breach of contract. In the alternative, they plead a claim under quantum meruit. Plaintiffs filed suit in this Court on December 7, 2012.

On January 16, 2013, Plaintiffs filed a First Amended Complaint (docket no. 15). In this pleading, Plaintiffs essentially allege the same facts, but offer additional allegations. Plaintiffs argue that Morgan was contacted by phone and email. Plaintiffs allege that the agreement entered into with Defendants was sent by email and various emails were exchanged between the parties prior to an understanding being reached. Plaintiffs set forth the terms of the agreement they are relying upon in this lawsuit. Plaintiffs allege that the "contract between MLG, Raphael Metzger and Mr. Morgan was accepted and concluded in Comfort, Texas." Plaintiffs further allege that Defendants sent various materials related to the *Gillan* case to Texas by overnight delivery, email and mail. With regard to the fraud claim, Plaintiffs assert that Metzger agreed to "do what was required" under California law to ensure a valid fee split, "but falsely and fraudulently intended to do no such thing." Plaintiffs also allege that Metzger falsely told Morgan that his out-of pocket expenses would be reimbursed. Finally, Plaintiffs assert that they were "intentionally excluded" from the settlement negotiations that subsequently took place with Safety Kleen, the defendant in the *Gillan* case.

## Defendants' Motions to Dismiss

On December 28, 2012, Defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (2) alleging that this Court does not have personal jurisdiction. They further argued improper service of process under Fed. R. Civ. P. 12(b) (5).

Defendants argue that although a few telephone calls may have been made by them to Morgan, they never travelled to Texas. Defendants assert that the agreement was for Morgan to assist them with the trials of various toxic tort cases filed in Los Angeles, California and that all

such meetings regarding the scope of the arrangement took place in Los Angeles.  Defendants assert that they do not practice law in Texas, are not licensed in Texas and have no "business dealings within the State of Texas."

The second motion to dismiss argues the same points, but responds to what Defendants assert are "inaccurate and irrelevant statements."  Defendants argue that this is a fee dispute, not a fraud case and that the fraud claim is "a lame attempt to create jurisdiction by pleading a false intentional tort."

Otherwise, Defendants argue that no specific personal jurisdiction exists because the Defendants did not purposefully avail themselves of the benefits and protections of Texas; merely contracting with a Texas resident does not establish minimum contacts (relying upon *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F. 3d 309 (5th Cir. 2007)); and communications by Defendants to Texas residents are insufficient to exercise specific personal jurisdiction.

With regard to the improper service argument, Defendants initially argued that they were improperly served with the Complaint when an unknown individual handed the summons and complaint to a "copy room clerk" while she was in the building elevator and told it was a "delivery."  Defendants argue that the "copy room clerk" was not an officer or agent authorized to receive service under either Texas or California law or the Federal or Texas Rules of Civil Procedure.  Since that time, the docket reflects that the Texas Secretary of State served the Defendants by certified mail.  *See* docket nos. 26, 27 and 28.  No party raises this issue any further; accordingly the Court assumes that any motion to dismiss for failure to properly serve the Defendants is now moot.

## Analysis

**Personal Jurisdiction: Legal Standard**

Federal Rule of Civil Procedure 12(b) (2) requires that, upon motion, a court must dismiss a claim against a defendant if the court lacks personal jurisdiction. "[T]he party seeking to invoke the power of the court ... 'bears the burden of establishing jurisdiction but is required to present only prima facie evidence.'" *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012); *see also Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) ("When the district court rules on [a motion to dismiss for lack of personal jurisdiction] without an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper.").

"A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Because Texas's long-arm statute reaches the constitutional limit, this Court must decide whether exercising personal jurisdiction over Defendants offends federal due process. *See id*.

"The exercise of personal jurisdiction comports with due process where: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with that state; and (2) the exercise of personal jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 367 (5th Cir. 2010) (*quoting Mink v. AAAA Dev. L.L.C.*, 190 F.3d 333, 336 (5th Cir. 1999)).

Personal jurisdiction can be established through either specific or general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ––– U.S. ––––, 131 S.Ct. 2846, 2853 (2011). In this case Plaintiffs argue only that specific personal jurisdiction exists over the Defendants. Accordingly, the Court will not analyze whether general jurisdiction applies.

### Specific Jurisdiction

The Fifth Circuit's test for specific personal jurisdiction considers: (1) whether the defendants have minimum contacts with the forum state, i.e., whether they purposely directed their activities toward the forum state or purposefully availed themselves of the privileges of conducting activities there; (2) whether the plaintiffs' causes of action arise out of or results from the defendants' forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 375 (5th Cir. 2012) (*quoting McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)). This Court will evaluate each factor in turn.

### Minimum Contacts

For minimum contacts to be established, "[I]t is essential ... that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (*quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The minimum contacts inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court." *Vanderbilt Mortg. & Fin.*, 692 F.3d at 375 (*quoting McFadin*, 587 F.3d at 759). "The defendant must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Id*.

In Morgan's Declaration he states Miller called his office in Texas and discussed trying some cases for the Metzger Law Group. He called her back and they discussed him travelling to California to discuss the cases. Morgan travelled to California and met with some MLG personnel from January 7 through 11, 2012. He further states that some documents relating to the California lawsuit were emailed from California or sent to his Texas office by mail, FedEx or UPS from December 2011 through March 2012. He also states that "hundreds" of emails and letters were exchanged between himself and Miller between October 28, 2011 and April 18, 2012, wherein he requested that documents and depositions be sent to his Texas office. He and his Texas staff reviewed the materials in Texas. Prior to returning to California, he and his staff did most of their trial preparation work in Texas. Morgan states that his office has "over 2,000 emails" between his Texas office and MLG "pertaining to this case, excluding the fee and expense dispute."

With regard to the contract at dispute, Morgan asserts that Miller emailed him the first iteration of a contingency fee contract on December 5, 2011. On January 10, 2012 another contract was sent by email, which he accepted in Comfort, Texas.

Finally, Morgan asserts that the defense attorneys in the *Gillan* case are Texas attorneys and that Morgan's personnel are residents in Texas. Accordingly, he asserts that since most of the witnesses in the case reside in Texas, Texas is a convenient forum. He also argues that since MLG was in constant contact with Safety-Kleen's defense counsel, a Texas firm, the Defendants were doing business in Texas with regard to the five Los Angeles cases.

### *Moncrief Oil Int'l Inc. v. OAO Gazprom*

Defendants argue that *Moncrief* establishes that merely contracting with Texas residents is insufficient to establish specific personal jurisdiction. This is an accurate restatement of

*Moncrief*. "[M]erely contracting with a resident of Texas is not enough to establish minimum contacts. Moreover, a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Moncrief*, 481 F.3d at 312. Here, despite the fact that Plaintiffs did a substantial amount of trial preparation in Texas, the agreement was for Plaintiffs to serve as lead counsel in a case to be tried in California. Defendants did not perform any obligations in Texas. The fact that Defendants emailed, faxed or sent documents to Plaintiffs does not alter these considerations. In this case, however, in addition to the contractual claim, Plaintiffs allege that Defendants engaged in fraudulent conduct.

Defendants argue that the fraud claim lacks merit and that "Plaintiffs are now grasping at false straws to try to save their case from a jurisdictional dismissal." Defendants simultaneously state that "the purported agreement between Defendant MLG and Plaintiff Morgan never contemplated the division of fees upon a mistrial of the underlying action"; "[f]ollowing the mistrial of the underlying action, a dispute arose regarding to what, if any fees, Plaintiff Morgan was entitled"; "Defendants noted a concern that Plaintiff Morgan had not actually performed his portion of the agreement"; and Defendants have never taken "the position that Plaintiff Morgan would not be paid for the services he allegedly rendered."

**Fraud allegations are sufficient to raise a prima facie case of specific personal jurisdiction**

The Fifth Circuit has recognized that a "single [fraudulent] act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Rossi v. Wohl*, 246 Fed. Appx. 856 (5th Cir. 2007).[1] In this case the Plaintiffs are alleging that the

---

[1] Relying upon *Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001) and *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir.1999).

California Defendants told Morgan that MLG would "do what was required" under California law to ensure a valid fee split. Plaintiffs also allege that Metzger falsely told Morgan that his out-of pocket expenses would be reimbursed. Although Defendants deny the fraud allegations, that denial does not negate specific personal jurisdiction. Further, Defendants continue to assert that the "actual content" of the communications between the parties consisted of the trial exhibits and case materials. Those, however, are not the communications that Plaintiffs rely upon for their fraud claim. As stated above, their fraud claim is premised upon verbal and email statements allegedly made by Defendants that a valid fee agreement was going to be procured and that Plaintiffs' expenses were going to be reimbursed. In addition, Defendants' argument that this case is merely a fee dispute, not a fraud claim, is questionable. In Defendants' June 7, 2012 correspondence in the *Safety-Kleen* litigation, Defendants requested a hearing in the Los Angeles County Superior Court of California and argued that Morgan's notice of lien filed in the *Safety-Kleen* case should be stricken because Morgan did not have any written retainer agreement with any of the Plaintiffs in the *Safety-Kleen* case, and accordingly under California law he did not possess any legal interest in the settlement funds. If MLG correctly states that there was no written retainer agreement, and California law bars Morgan from asserting any interest in the settlement, how were Plaintiffs going to be lawfully paid without breaching any ethics provisions? "Where facts are disputed, the plaintiff presenting a *prima facie* case is entitled to have the conflicts resolved in his favor." *Wien Air,* 195 F.3d at 211.

Accordingly, Plaintiffs have established a prima facie case that Defendants had minimum contacts with Texas because they purposefully directed activities at Texas and the litigation results from alleged injuries that arise out of or relate to those activities.

**Assertion of jurisdiction over Defendants would not be unfair**

Once a plaintiff has established minimum contacts with the forum state, the burden shifts to the defendant to show that the assertion of jurisdiction over him would be unfair. *Wien Air*, 195 F.3d at 215. "[I]t is rare that a defendant can make such a compelling case once minimum contacts have been shown." *Id*. "If a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state." *Id*.

To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a "compelling case" against it. *Burger King Corp.,* 471 U.S. at 477. The standards to be used are the "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987). The interests to balance in this determination are the burden on the defendants having to litigate in Texas; the forum state's interests in the lawsuit; the plaintiffs' interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies. *See Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.*, 9 F.3d 415, 421 (5th Cir. 1993).

Defendants argue it would be "tremendously burdensome" to defend this case in Texas; MLG is a "small law firm" and having to defend this lawsuit in Texas would make "it difficult, if not impossible, for the firm to represent its clients in California during the pendency of the instant case." Otherwise they argue that all witnesses and documents are located in California. Finally, they argue that the State of California has the greater interest in adjudicating the dispute because a well-known California law firm is accused of defrauding an attorney who was admitted pro hac vice to the bar of California.

The Court finds that Defendants' statements are conclusory and overreaching. MLG has argued at various times that it is a preeminent law firm specializing in toxic tort cases. It also argues that this matter is a simple fee dispute. It appears incredulous that a "simple fee dispute" would make it impossible for MLG to represent its clients.

Admittedly, litigation in Texas will be an inconvenience upon the Defendants. However, once minimum contacts are established, the interests of the forum and the plaintiffs justify even large burdens on a defendant. *See Asahi*, 480 U.S. at 115. Moreover, Texas clearly has an interest because the dispute involves a Texas law firm who allegedly was defrauded. Thus, the exercise of jurisdiction comports with the due process clause in this case. *See, e.g., D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 548 (5th Cir. 1985).

## Conclusion

Defendants' motion to dismiss for lack of personal jurisdiction (docket no. 7) is DENIED. Defendants' motion to dismiss for improper service (docket no. 7) is dismissed as moot. Defendants' second motion to dismiss (docket no. 22) is DENIED. Plaintiffs' motion to file document under seal (docket no. 38) is GRANTED.

SIGNED this 16th day of April, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE